[Nos. 39348-1-I; 39349-9-I. Division One. July 20, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD HUMPHREY, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT PHILLIP PAYNE, *Defendant*, RUVIN AZRIEL MUNDEN, *Appellant*.

---

[12]*Broadaway*, 133 Wn.2d at 135.

[13]*Id.* at 136.

*Eric Broman* and *Lindsay Brown* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Erin Riley, Deputy*, for respondent.

GROSSE, J. — The statutory victim assessment penalty is imposed upon a conviction for a crime. It is the fact of conviction not the fact of committing a particular crime that triggers the assessment. Therefore, the legislatively mandated increase in that penalty does not implicate constitutional principles of due process or prohibitions against ex post facto laws despite the fact that the increase occurred after the time each of these defendants committed their crimes but before sentencing.

## Humphrey

In January 1996, the State charged Humphrey with a violation of the Uniform Controlled Substances Act (VUCSA) committed on December 5, 1995. The information was amended to an "attempted VUCSA" charge. Humphrey pleaded guilty on August 12, 1996 to the amended charge. The court imposed a suspended sentence and ordered probation. In addition, the court imposed a $500 victim penalty assessment. Counsel for Humphrey objected, arguing that the appropriate penalty assessment was $100, as provided for by law at the time the offense was committed. Counsel also objected to imposition of the $500 penalty

on the ground that imposition of the higher amount would violate the prohibition against ex post facto laws.

The trial court decided to follow the plain meaning of the statute, and imposed the higher penalty. Humphrey's appeal followed.

## Munden

Munden was charged on November 3, 1995 with taking a motor vehicle without permission, allegedly committed on May 21, 1995. Munden pleaded guilty on July 31, 1996. Munden's statement on entering a plea noted that the prosecutor would recommend that he pay a victim penalty assessment of $100. The prosecutor did so recommend using a preprinted recommendation form. In addition, the last sentence in section 4.1 (Restitution and Victim Assessment) of the judgment and sentence states: "Defendant shall pay Victim Penalty Assessments pursuant to RCW 7.68.035 in the amount of $100 if all crime(s) date prior to 6-6-96 and $500 if any crime date in the Judgment is after 6-5-96." On September 6, 1996, the court imposed a standard range sentence and also imposed a $500 victim penalty assessment. Counsel for Munden voiced his objections on grounds similar to Humphrey. The court imposed the higher penalty. Munden's appeal followed.

## DISCUSSION

In 1996, the Legislature amended the statute setting forth the victim penalty assessment, RCW 7.68.035(1)(a), raising the amount from $100 to $500.[1] The amendment became effective on June 6, 1996. Humphrey and Munden claim that the amendment applies only to *offenses* committed on or after that date.

■■ The pertinent language of the victim penalty assessment statute is as follows:

---

[1]LAWS OF 1996, ch. 122, § 2, p. 375.

> Whenever any person *is found guilty* in any superior court of having committed a crime, . . . there shall be imposed by the court *upon such convicted person* a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be five hundred dollars for each case or cause of action that includes one or more *convictions* of a felony or gross misdemeanor[.]

RCW 7.68.035(1)(a) (emphasis added). Contrary to the argument of Humphrey or Munden, we hold the statute is not ambiguous and we must give effect to the plain language and meaning of it.[2] The unambiguous wording of the statute indicates the assessment is imposed upon the finding of guilt, and not before.

Humphrey and Munden each pleaded guilty after the June 6, 1996 effective date of the amendment. The trial court indicated that besides the plain meaning of the statute, it was relying on a previous opinion issued by the Attorney General.[3] There, in answering a question similar to the issue posed here, the Attorney General indicated the penalty assessment provided for by the statute, as amended, applied in the case of a conviction after the effective date, even of a crime committed prior to that date. The opinion stated that the operative event, under amended RCW 7.68.035(1), remains a conviction or a finding of guilt. It does not matter when the crime itself was committed. It is the finding of guilt, or the entering and acceptance of the guilty plea, that creates the liability for the victim penalty assessment.

Humphrey and Munden assert that the Attorney General Opinion and the lower courts have misinterpreted the "whenever" in the first line of the section, "[w]henever any person is found guilty" to mean "at the time" of a

---

[2]*In re Boot*, 130 Wn.2d 553, 565, 925 P.2d 964 (1996); *Department of Licensing v. Lax*, 125 Wn.2d 818, 822, 888 P.2d 1190 (1995). *See also City of Seattle v. Williams*, 128 Wn.2d 341, 348-49, 908 P.2d 359 (1995) (in looking to discern what Legislature intended, courts look to plain meaning of the words used in the statute).

[3]9 Op. Att'y Gen. 1335, at 1338 (1982) (question 4).

finding of guilt. They argue that the "operative event" is not the conviction but that the operative "triggering" event is the commission of the offense, and that the conviction has no relevance. They assert that if it had relevance, then defendants who committed the same offense on the same day could receive entirely different penalty assessments depending on their eventual conviction date(s). They claim that the assessment is a penalty for their illegal act and is imposed as a direct consequence of the offense, not the conviction. They conclude that the "whenever" in the statute is an instruction to the court to impose the penalty based, not on when the conviction occurred, but "whenever the penalty is warranted"—after a finding of guilt.

We do not agree. Humphrey's and Munden's interpretation of the statute belies the plain meaning of the wording of the statute. It imposes the assessment only after a conviction or finding of guilt.

 Next, Humphrey and Munden argue that the amended statute cannot be applied retroactively to their crimes. Generally, statutes are presumed to operate prospectively, unless there is an indication of legislative intent to the contrary.[4] Generally, a statute operates prospectively when the precipitating event for its application occurs after the effective date of the statute. In the recent case of *State v. Blank*,[5] the Supreme Court indicated that a statute does not operate retroactively merely because it relates to prior facts or transactions where it does not change their legal effect. The court stated that a statute is not necessarily retroactive because some of the requisites for its "actions" are drawn from a time antecedent to its passage.[6]

 Humphrey and Munden again claim that the

---

[4]*Macumber v. Shafer,* 96 Wn.2d 568, 570, 637 P.2d 645 (1981).

[5]*State v. Blank,* 131 Wn.2d 230, 930 P.2d 1213 (1997).

[6]*In re Estate of Burns,* 131 Wn.2d 104, 111, 928 P.2d 1094 (1997) (quoting *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S. Ct. 1483, 1499, 128 L. Ed. 2d 229 (1994) (" 'a statute does not operate "retrospectively" merely because it is

precipitating event for the application of this statute is the commission of the crime. But here, the application of the higher assessment does not involve retroactive application of a statute. As stated above, in these cases the precipitating event is the conviction or determination of guilt. The statute does not apply unless and until a defendant is convicted. The statute is not triggered, and no victim assessment penalty is imposed until the conviction occurs. Although the conviction has its origin in a crime which occurred prior to the enactment of the increase in the assessment, it is the conviction that sets the assessment in motion. Further, the statute is remedial and procedural in nature, and does not affect vested or substantive rights. Thus, it may be applied retroactively in any event.

Humphrey and Munden argue that if the amended $500 penalty applies to offenses occurring before the June 6, 1996 effective date, then the amendment violates the ex post facto prohibitions of the state and federal constitutions. These provisions forbid enacting any law which imposes punishment for an act which was not punishable when committed, or increases the amount of punishment annexed to the crime when it was committed.[7] The interest protected under these prohibitions is not a person's right to less punishment, but that of fair notice. The *Ward* case sets forth the test as follows:

> A law violates the ex post facto clause if it: (1) is substantive, as opposed to merely procedural; (2) is retrospective (applies to events which occurred before its enactment); and (3) *disadvantages the person affected by it.*[8]

 Ex post facto prohibitions apply only to laws inflict-

applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law' ").

[7]U.S. CONST. art. I, § 10; CONST. art. I, § 23; *see Weaver v. Graham* 450 U.S. 24, 28-29, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981); *State v. Ward*, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994); *In re Personal Restraint of Powell*, 117 Wn.2d 175, 184, 814 P.2d 635 (1991).

[8]*Ward*, 123 Wn.2d at 498 (quoting *Powell*, 117 Wn.2d at 185).

ing criminal *punishment*.[9] Although potentially burdensome, the victim penalty assessment is not punitive. It does not define or punish criminal behavior. It does not relate to or increase the prescribed punishment for any particular crime. It is not imposed due to the specific "nature" of a crime or offense, but applies "across the board" to all persons found guilty of a crime. The purpose of the assessment is remunerative, rather than retribution or a deterrent. It does not affect restitution for a particular victim or relate to any injury or loss from the actual crime committed. Rather, it is payment to a general fund and is remedial in nature.

*State v. Blank* is analogous. There, the court discussed a new statute which permitted the State to recoup fees for court-appointed counsel and for expenses incurred in producing the report of proceedings and the clerk's papers on appeal. In addressing Blank's *ex post facto* argument, the Supreme Court quoted from this court's opinion in *Blank* holding that the statute was not substantive.

> It does not create a new right to attorney's fees, as Blank suggests, and it does not take away a vested right. It does not affect Blank's right of appeal, or his right to public funds to finance it, if he is indigent. He does not have, and never did have, a right to an appeal at public expense, if he can afford to pay for that appeal. The statute simply provides a mechanism for recouping the funds advanced to ensure his right of appeal. It is clearly procedural.[10]

The same is true here. The victim penalty assessment and the assessment fund were in place at the time Humphrey and Munden committed their crimes. The amendment created nothing new except an increase in the assessment amount. Contrary to the arguments otherwise, the

---

[9]*Id.* at 499.

[10]*Blank*, 131 Wn.2d at 250 (quoting *State v. Blank*, 80 Wn. App. 638, 641-42, 910 P.2d 545, *review denied*, 129 Wn.2d 1017 (1996)). (Blank's petition for review of the Court of Appeals decision affirming his conviction was denied. However, the court granted review of the costs granted to the State and entry of the recoupment order as part of the judgment and sentence.)

fact that the amendment makes the assessment more burdensome does not make it punitive. It would not be rational to believe that a defendant relied on the victim penalty assessment of $100 rather than $500 to decide on whether or not to commit a crime.

The *Ward* case clarified what is meant by whether the change "disadvantages the person affected by it." In light of the U.S. Supreme Court's holding in *Collins v. Youngblood*,[11] the sole determination is whether the law alters the standard of punishment which existed under the prior law. As explained above, Humphrey and Munden are not "disadvantaged" by the statute because it does not alter the standard of punishment which existed under the prior law. While the amount of the assessment may indeed be more burdensome, the focus of the inquiry is whether payment constitutes punishment. It does not.[12]

The decision is affirmed.

AGID, A.C.J., concurs.

ELLINGTON, J. (Dissenting) — I must respectfully dissent. The majority concludes that the "triggering event" or "operative date" for purposes of the victim penalty assessment is the date of conviction. I believe, however, that the date of the crime is the triggering event, and because the 1996 amendment to RCW 7.68.035(1)(a) contains no indication the Legislature intended to apply the increase in the assessment amount retroactively, I would hold that the statute in effect at the time of the crime controls the amount of the assessment. I would therefore remand for resentencing.

The majority interprets the opening phrase of the statute ("[w]henever any person is found guilty") to mean "at

---

[11]*Collins v. Youngblood*, 497 U.S. 37, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990).

[12]Additionally, it should be noted that there are sufficient safeguards in the sentencing scheme to prevent the imprisonment of indigent defendants and the victim penalty assessment is not unconstitutional. *See State v. Curry*, 118 Wn.2d 911, 918, 829 P.2d 166 (1992).

the time" any person is found guilty. Majority, at 681-82. I cannot subscribe to this conclusion because my reading of the same language is different, and legislative history indicates a different construction.

The plain meaning of the term "whenever" is "in any or every instance." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2602 (1976). Thus, the language at issue merely indicates that the assessment is mandatory, i.e., it should always (in every instance) be imposed upon conviction. The language does not identify the triggering event for application of the statute.

Indeed, in amending chapter 7.68 RCW, the Legislature has on at least two occasions identified the date of the crime as the triggering event in the context of specifying either prospective or retroactive application of the amendments. *See* LAWS OF 1997, ch. 249, § 2 (amendment applies retroactively to "criminal acts that occur on April 1, 1997, and thereafter"); LAWS OF 1989, ch. 252, § 27 (amendment applies prospectively to "offenses committed on or after the effective date of this act"). The Legislature has done so despite the opening phrase "[w]henever any person is found guilty." Thus, the term "whenever," as used in RCW 7.68.035(1)(a), does not delineate the triggering event for imposition of the victim penalty assessment.[13] Rather, I

---

[13]This interpretation appears consistent with the legislative intent in other instances in which the word "whenever" has been used. *See* RCW 9.92.060(1) (*"Whenever any person is convicted of any crime* except murder, burglary in the first degree, arson in the first degree, robbery, rape of a child, or rape, the superior court may, in its discretion, at the time of imposing sentence upon such person, direct that such sentence be stayed and suspended until otherwise ordered . . . ." (emphasis added)); RCW 9.92.070 ("Hereafter *whenever any judge . . . shall sentence any person* to pay any fine and costs, the judge may, in the judge's discretion, provide that such fine and costs may be paid in certain designated installments . . . ." (emphasis added)); RCW 9.92.100 (*"Whenever any person shall be adjudged guilty* of carnal abuse of a female person under the age of ten years, or of rape, or shall be adjudged to be an habitual criminal, the court may . . . direct an operation to be performed upon such person, for the prevention of procreation." (emphasis added)); RCW 9.94A.120 ("When a person is convicted of a felony, the court shall impose punishment as provided in this section . . . . (3) *Whenever a sentence outside the standard range is imposed,* the court shall set forth the reasons for its decision in written findings of fact and conclusions of law." (emphasis added)). In each of the above examples, the term "whenever" is

believe the operative date is the date the crime was committed.[14]

Whether Messrs. Humphrey and Munden are subject to the higher assessment therefore depends on whether the Legislature intended the 1996 amendment to apply retroactively. A statute is presumed to operate prospectively in the absence of express or implied legislative intent to the contrary. *In re Estate of Burns*, 131 Wn.2d 104, 110, 928 P.2d 1094 (1997).

The materials relating to the 1996 amendment contain neither an express nor an implied indication of legislative intent to apply the increase in the victim penalty assessment retroactively. When, however, the same statute was amended in 1989, increasing the assessment from $70 to $100 in felony cases, the Legislature specifically provided for prospective application: "[T]his act . . . applies only to offenses committed on or after the effective date of this act." LAWS OF 1989, ch. 252, §§ 27, 29. In contrast, in amending chapter 7.68 RCW in 1997, the Legislature specifically announced retroactive application. *See* LAWS OF 1997, ch. 249, § 2 (the "act is remedial in nature and applies to criminal acts that occur on April 1, 1997, and thereafter"). As evidenced, the Legislature knows how to specify retroactive application, and in light of its silence on the matter, the Legislature must be presumed to have intended the 1996 amendment to operate prospectively.

I believe the majority has inappropriately given the 1996 increase in the victim penalty assessment retroactive ef-

---

used to indicate that, if the specified condition (italicized clause) is met, the remainder of the provision applies.

[14]Interestingly enough, after oral argument in these cases, the State, in another case involving the same issue and the same trial court, conceded that the "operative date" for purposes of ex post facto analysis of RCW 7.68.035(1) is "the date on which the crime was committed, not the date of conviction." State's Mot. for Remand for Resentencing Based on Resp't's Concession of Error at 3, *State v. Erickson*, No 40832-1-I. This Court accepted the State's concession and remanded for resentencing. *State v. Erickson*, No. 40832-1-I (Wash. Ct. App. Jan. 12, 1998).

fect. I would therefore reverse the $500 assessment in these cases and remand for resentencing.

Review granted at 137 Wn.2d 1008 (1999).